**[Cite as *State v. B.C.M.*, 2017-Ohio-1497.]**

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee/Cross-Appellant, | : | CASE NOS. CA2016-07-059<br>CA2016-07-062 |
| | : | O P I N I O N |
| - vs - | | 4/24/2017 |
| | : | |
| B.C.M., | : | |
| Defendant-Appellant/Cross-Appellee. | : | |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 16-N000132

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee/cross-appellant

Joshua Engel, Mary Martin, 5181 Natorp Blvd., Suite 210, Mason, Ohio 45040, for appellant/cross-appellee

**RINGLAND, J.**

{¶ 1}    Appellant, B.C.M., appeals from the decision of the Warren County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child for having committed acts that if charged as an adult would constitute rape.  For the reasons detailed below, we affirm.

{¶ 2}    The state filed a complaint alleging that B.C.M. was delinquent for committing

two counts of rape in violation of R.C. 2907.02(A)(1)(b), first-degree felonies if committed by an adult. The charges stemmed from allegations that B.C.M., then 15 years old, engaged in vaginal and anal intercourse with the victim, his eight-year-old sister. The victim described the abuse to a social worker at a children's advocacy center. That interview was video-recorded.

{¶ 3} While the delinquency case was pending, the court remanded B.C.M. to a youth detention facility where he remained until the trial occurred in May 2016. B.C.M. alleges that he spent 103 days in the facility before his trial commenced.[1] At the bench trial, and at the state's request, the court called the victim and the children's mother as the court's witnesses.[2]

{¶ 4} The victim, who was nine and one-half years old at the trial, testified that the abuse occurred several times before her ninth birthday in B.C.M.'s bedroom. B.C.M. would close and lock the door. She and B.C.M. would then take their clothes off, except for their shirts. They would lay on the bed. Sometimes B.C.M. was on top and sometimes she was on top.

{¶ 5} The record indicates the victim had a very difficult time talking about what happened next. The victim testified that B.C.M.'s "wee wee" (her word for both male and female genitalia) "touched her body" on her wee wee and her "bum bum" (her word for the buttocks or anal area). The state asked the victim if the touching on was on the "inside" or "outside." The victim responded, "outside."

{¶ 6} The state asked if the victim recalled telling the social worker that the touching happened on the inside. The victim said, "yeah." When asked to explain the discrepancy,

---

1. The state does not dispute the length of time B.C.M. was held in detention. For purposes of this appeal, we presume the accuracy of the day count.

2. In its motion asking the court to call these witnesses pursuant to Evid.R. 614(A), the state argued that B.C.M.'s mother was uncooperative with the state's effort to prosecute B.C.M. and was cooperating with B.C.M.'s defense counsel. Accordingly, the state indicated it could not be certain how the victim or the victim's mother would testify at trial.

the victim responded "because it was on me. It was like spreading out a little bit. Like spreading my butt out and my wee wee."

{¶ 7} The state asked the victim if she recalled telling the social worker that when B.C.M. did it, "pee" would come out afterwards. She responded, "little drops * * * from [B.C.M.]" The state asked the victim if it was true when she told the interviewer that B.C.M. would "dig deep" into her bum bum. The victim confirmed it was true. The state asked her how that felt and she said, "it hurt."

{¶ 8} The state asked the victim if she recalled telling the social worker that the pee or little drops would come out of her "middle." She indicated she did not recall. The victim testified that she could not recall telling the social worker about the appearance or size of B.C.M.'s penis, although she recalled discussing that it had hair. The victim also did not recall telling the social worker that it felt different when B.C.M. "put it in the middle" as compared to her bum bum. The victim testified that she "kind of" remembered telling the social worker that when B.C.M. put his wee wee in her wee wee "it would tickle [her] bad spot."

{¶ 9} After these few instances of the victim testifying that she could not recall certain statements to the social worker, the state sought leave to refresh the victim's recollection by showing her the interview video. Over objection, the court allowed the state to play the video of the entire hour-long interview. The trial judge remained in the courtroom while the video was played for the victim. However, the parties agreed that the court would not consider the video as substantive evidence.

{¶ 10} In the video, the social worker spends some time building a rapport with the victim and asking questions unrelated to the abuse. The social worker eventually begins asking questions concerning the victim's understanding of body safety and whether she has ever experienced any issues with body safety. Ultimately, the victim reveals the abuse and

discusses it in some detail.

{¶ 11} After watching the video, the state asked the victim questions concerning whether she now recalled telling the interviewer about the additional details she provided in the interview. She responded yes to most of these questions.

{¶ 12} On cross-examination, the victim provided conflicting testimony. Initially she testified that B.C.M. touched her inside her bum bum, "where the poop goes out." Later, however, the victim agreed with defense counsel's assertions that B.C.M. only rubbed against her and agreed with the statement that "at no point did he ever put his wee wee inside of you."

{¶ 13} The victim's mother testified that the victim revealed that there was "inappropriate behavior" occurring between her children. She said she talked to B.C.M. and told her what she had learned and that he did not deny it. She understood that "rubbing" of private parts is what occurred.

{¶ 14} The state called the social worker who conducted the victim's interview. Through the social worker's testimony, the state sought to establish facts that would support the conclusion that the video qualified under the Evid.R. 803(4) "statements for purposes of medical diagnosis or treatment" hearsay exception. After hearing the social worker's testimony, the court ruled that it would not admit the video. The court commented that it felt that the state's case would rest on the victim's trial testimony and that the video would not help it render a decision.

{¶ 15} After considering the evidence, the court adjudicated B.C.M. a delinquent child on both counts of rape. B.C.M. appeals, raising four assignments of error. The state cross-appeals, raising one assignment of error. We address B.C.M.'s first two assignments of error together.

{¶ 16} B.C.M.'s Assignment of Error No. 1:

- 4 -

{¶ 17} THE CONVICTION IN THIS MATTER WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 18} B.C.M.'s Assignment of Error No. 2:

{¶ 19} THE CONVICTION IN THIS MATTER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 20} B.C.M. argues that the state's evidence of vaginal and anal penetration was insufficient to allow the factfinder to adjudicate him delinquent for rape and was against the manifest weight of the evidence.[3] B.C.M. further argues that the state's evidence was insufficient after excluding inadmissible hearsay evidence, which he contends the court necessarily relied upon in its decision.

{¶ 21} The standards of review applied in determining whether a juvenile court's finding of delinquency is supported by sufficient evidence or is otherwise against the manifest weight of the evidence are the same standards as applied in adult criminal convictions. *In re I.L.J.F.*, 12th Dist. Butler No. CA2014-12-258, 2015-Ohio-2823, ¶ 24. When reviewing the sufficiency of the evidence, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34.

---

3. B.C.M. conceded both at trial and on appeal that the evidence supported a finding that sexual contact occurred and that an adjudication of delinquency for gross sexual imposition would have been appropriate.

**{¶ 22}** On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. However, while appellate review includes the responsibility to consider the credibility of witnesses and the weight given to the evidence, these issues are primarily matters for the trier of fact to decide. *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43.

**{¶ 23}** As noted above, B.C.M. was adjudicated delinquent for two counts of rape in violation of R.C. 2907.02(A)(1)(b). The statute provides:

> (1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when * * *:
>
> * * *
>
> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

The Revised Code defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and,

without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A)

<u>Evidence of Penetration</u>

{¶ 24} B.C.M. argues that the state's evidence failed to show that B.C.M. penetrated the victim's vaginal or anal opening because the victim repeatedly testified that the touching occurred "outside." We find that the record contains sufficient evidence upon which the court could conclude beyond a reasonable doubt that penetration occurred, both vaginally and anally.

{¶ 25} With respect to vaginal penetration, the victim testified that B.C.M. touched her wee wee with his wee wee and described the touching as a "spreading out" of her wee wee. The state asked the victim if she recalled telling the social worker that after B.C.M. put his wee wee in her, "pee" would come out of her middle. She responded affirmatively, by describing the pee as "little drops," and then stated they were from B.C.M. These facts constitute sufficient evidence upon which the trial court could conclude beyond a reasonable doubt that B.C.M. penetrated the victim's vaginal opening.

{¶ 26} With respect to anal penetration, the victim testified that B.C.M. touched her bum bum with his wee wee. Again, she described the touching as "spreading out." The victim agreed that she told the interviewer that B.C.M. would "dig deep" into her bum bum, and that was a true statement. When asked how it felt she said, "it hurt." Finally, B.C.M. testified on cross-examination that the touching occurred "where the poop goes out." These facts are sufficient evidence upon which the trial court could conclude beyond a reasonable doubt that B.C.M. penetrated the anal opening.

{¶ 27} We further conclude that the adjudication of delinquency for both rape counts

was not against the manifest weight of the evidence. The victim's testimony, if believed, supports the conclusion that penetration, which need only be slight, occurred. The trial court sitting as factfinder was in a better position than us to observe the demeanor of the witness and determine the weight to be afforded her testimony. In the same respect, the court was in a better position to determine the effect of portions of the victim's testimony that appear inconsistent, including when the victim vacillated concerning where the touching occurred.

{¶ 28} However, we note that when the victim testified that the touching occurred outside, the state impeached her by reminding her that she told the social worker that B.C.M. touched her "inside." She agreed she had. When asked to explain the discrepancy, her response suggested penetration occurred:

> THE STATE: Okay. Can you tell me why you told [the social worker] inside and why you are saying outside today?
>
> THE VICTIM: Because it was on me. It was like spreading out a little bit. Like spreading my butt out and my wee wee.

(Emphasis added.)

{¶ 29} Thus, the court may have discounted the victim's testimony that the touching occurred "outside." We are also mindful that the record reflects that the victim was testifying in front of her mother, who the state alleged was not cooperating with their efforts and firmly believed that her son had only rubbed his genitalia on the victim's genitalia and buttocks. Finally, the victim was also testifying in front of her abuser, a brother who she had not seen for a long time.

{¶ 30} B.C.M. argues that this case is similar to *State v. Ferguson*, 5 Ohio St.3d 160 (1983). There, the Ohio Supreme Court held that the alleged victim's testimony that she had "intercourse" with the defendant but did not testify to any degree of penetration was insufficient as a matter of law to support a rape conviction. *Id.* at 167-168. We find *Ferguson* distinguishable. Here, the victim's testimony was more descriptive and described specific

physical actions related to penetration, including "spreading" the genitalia, and "digging deep" into her rear end. In sum, we conclude that B.C.M.'s adjudication was supported by sufficient evidence and was not against the manifest weight of the evidence.

Consideration of Improper Hearsay Evidence

{¶ 31} Next, B.C.M. argues that there was insufficient evidence to support his adjudication if we exclude allegedly inadmissible evidence upon which B.C.M. contends the lower court relied. B.C.M. refers to these comments by the court before it announced his finding of delinquency: "As I listen to her testify, I heard . . . drops came out of my middle which was his drops. And then I also heard her say he would dig deep into my bum bum until it hurt."

{¶ 32} B.C.M. argues that these facts could only have come from the state's effort to impeach the witness with prior inconsistent statements she made to the social worker. Accordingly, B.C.M. contends the trial court adjudicated him delinquent based on inadmissible hearsay.

{¶ 33} Initially, we note that this argument was raised in the scope of an attack on the sufficiency of the evidence. In a sufficiency-of-the-evidence analysis we need not determine whether evidence was properly admitted by the trial court. In *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, the Ohio Supreme Court rejected the argument that a reviewing court should only consider properly admitted evidence to determine whether the state has presented sufficient evidence to support a conviction. *Id.* at ¶ 1, 19. Rather, a reviewing court should consider all the evidence admitted at trial, whether improperly admitted or not. *Id.* at ¶ 25-26. Accordingly, having already concluded that there was sufficient evidence to support both counts, this argument is rendered moot. However, assuming, arguendo, that the issue was not moot, we would not find any error here.

{¶ 34} A party may interrogate a witness with a prior inconsistent statement where the

purpose is to refresh the recollection of that witness. *State v. Dick*, 27 Ohio St.2d 162, 165. Through this technique, "a witness often can be convinced to correct his or her trial testimony when confronted with a prior inconsistent statement and to adopt the inconsistent statement as the accurate rendition of facts." *State v. Slaughter*, 2d Dist. Montgomery No. 25215, 2014-Ohio-862, ¶ 51.[4] That is what occurred here with respect to the two issues raised by B.C.M. The victim said "little drops" in response to being asked if she recalled telling the social worker about "pee" coming from her middle. Her testimony was both an acknowledgment of what she told the interviewer as well as an affirmation that the underlying event occurred. "Little drops" was her own commentary on how the state phrased what she experienced.

{¶ 35} There was also admissible trial testimony upon which the court could conclude that B.C.M. "dug deep" into the victim's rear end. During her testimony, the victim agreed that she told the social worker that B.C.M. would "dig deep" into her "bum bum." In a follow-up question, the victim then confirmed that when she said this to the social worker, it was true. Then, the victim testified as to how the this made her feel: "It hurt." In sum, we find that the court did not rely on inadmissible evidence to adjudicate B.C.M. delinquent. We overrule B.C.M.'s first two assignments of error.

{¶ 36} B.C.M.'s Assignment of Error No. 3:

{¶ 37} THE JUVENILE COURT IMPROPERLY PERMITTED THE STATE TO PLAY AN ENTIRE FORENSIC INTERVIEW TO "REFRESH THE RECOLLECTION" OF THE ALLEGED VICTIM.

{¶ 38} B.C.M. argues that the court abused its discretion by allowing the state to

---

4. We note that the state was not required to demonstrate surprise and affirmative damage under Evid.R. 607(A) prior to impeaching the victim because the victim was the court's witness. *State v. Kraus*, 12th Dist. Warren No. CA2006-10-114, 2007-Ohio-6027, ¶ 19.

refresh the victim's memory as to the statements she made to the social worker by showing her the video of the interview. B.C.M. contends that the video, as a prior statement, could only be used to refresh the witness's recollection as to the acts of sexual abuse, not as to her recollection of the statements she gave to the interviewer concerning that abuse. B.C.M. also contends the court erred by allowing the state to play the entire video of the interview, rather than just those portions relevant to the statements the victim testified she could not recall. Finally, B.C.M. argues further that the trial court, sitting as factfinder, erred in watching the video while it was being played for the victim.

{¶ 39} The state contends the trial court did not abuse its discretion because of the circumstances at trial. The victim was young and was nervous testifying in front of her older brother and her mother about sexual activity with her older brother. The state indicates that it attempted to "gently guide" the victim towards discussing the specific sex acts alleged by asking her if she could recall statements she made to the social worker. And when the victim testified that she could not recall what she told the social worker, the court allowed the state to play the video of the interview to refresh her recollection. The state argues that the court did not abuse its discretion in permitting the state to play the entire hour-long interview because there was information necessary to refresh the victim's testimony scattered throughout the video. Finally, the state argues that the trial court's decision to have the victim watch the video in its presence was not error because the court understood and the parties agreed that the video would not be used as substantive evidence.

{¶ 40} The decision to permit a party to refresh the memory of its witness with a writing or statement lies within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *See State v. Bedford*, 39 Ohio St.3d 122, 130 (1988). An abuse of discretion suggests the trial court's decision was unreasonable, arbitrary or unconscionable. *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶

8.

{¶ 41}  A party may refresh the recollection of a witness by showing him or her a prior statement.  *State v. Ballew*, 76 Ohio St.3d 244, 254 (1996); Evid.R. 612.  It must be first established that the witness lacks a recollection of the information or events contained in the prior statement.  *Dayton v. Combs*, 94 Ohio App.3d 291, 297 (2d Dist.1993).  The party may not read the statement aloud, have the witness read it aloud, or otherwise place it before the jury.  *Ballew* at 254, citing *Dayton* at 298.  After the witness, has reviewed the prior statement he may be asked if his recollection is refreshed and continue with his testimony.  *Dayton* at 298.  But the statement used to refresh the witnesses' recollection is not admitted into evidence unless requested by the adverse party and is not to be considered as substantive evidence.  *Id.*

{¶ 42}  The record reflects that the victim testified she could not recall telling the social worker about the size and appearance of B.C.M.'s penis, where the "pee" came out of her, and if it felt different when B.C.M. touched her in her "middle" as opposed to her bum bum.  We perceive no abuse of discretion in the court permitting the state to use the video to refresh the victim's recollection of those statements described above.  Additionally, we reject the contention, for which B.C.M. provides no legal authority, that a party is restricted to refreshing a witness' recollection to the "event in question."  We are not aware of any law or authority that would arbitrarily prohibit a party from refreshing the recollection of a witness on any subject so long as it meets the standard for relevancy as defined by Evid.R. 401.

{¶ 43}  However, we find that the court's decision to allow the state to play the entire video was erroneous.  Most of the hour-long video was unrelated to the few matters upon which the victim testified she did not recall.  The state should have only been permitted to play the relevant portions of the interview and continued with its questioning.

{¶ 44}  Nonetheless, we find that the error was harmless.  By the time the state played

the video, the victim had already provided the testimony necessary to convince the factfinder of B.C.M.'s delinquency for the offenses charged. Accordingly, the video, wherein the victim essentially delves into greater detail about the abuse, was surplusage, i.e., "it did not prove anything which needed to be proved." *State v. Lallathin*, 7th Dist. Noble No. 299, 2003-Ohio-3478, ¶ 37.

**{¶ 45}** Finally, we find no abuse of discretion in the court's decision to remain in the courtroom as the victim watched the video. While not preferable, and we would almost assuredly resolve this matter differently in a jury trial setting, the court sitting as factfinder is presumed to only consider the relevant, admissible evidence. *State v. Buchanan*, 12th Dist. Clermont No. CA98-09-077, 1999 Ohio App. LEXIS 2243, *13 (May 17, 1999). In this case, the court's comments prior to adjudicating B.C.M. delinquent confirm that the content of the video did not factor into the court's decision. B.C.M.'s third assignment of error is therefore overruled.

**{¶ 46}** B.C.M.'s Assignment of Error No. 4:

**{¶ 47}** THE JUVENILE WAS NOT BROUGHT TO TRIAL IN A SPEEDY MANNER IN VIOLATION OF HIS CONSTITUTIONAL DUE PROCESS RIGHTS.

**{¶ 48}** B.C.M. argues that the state deprived him of a constitutional right to a speedy trial because he was detained for 103 days before his trial.

**{¶ 49}** The statutory speedy trial time periods set forth in R.C. 2945.71 do not apply to delinquency cases in juvenile courts. *State ex rel. Williams v. Court of Common Pleas*, 42 Ohio St.2d 433, 434-435 (1975).[5] And neither the Supreme Court of the United States nor

---

5. We note that Juv.R. 29(A) provides that the court should schedule the adjudicatory hearing within 15 days after the filing of the complaint. However, Juv.R. 29(A) further provides that the failure to hold the hearing within this time period does not affect the court's jurisdiction or the validity of its orders. Additionally, R.C. 2152.04 provides that a juvenile alleged to be delinquent may be detained for up to 90 days for the purpose of compiling the juvenile's social history. However, that rule and statute do not affect our analysis of B.C.M.'s assignment of error alleging that the court violated a constitutional right to a speedy trial.

the Ohio Supreme Court has extended the Sixth Amendment right of the accused to a speedy trial to juvenile delinquency hearings. *State v. Johnson*, 12th Dist. Butler No. CA2011-09-169, 2013-Ohio-856, ¶ 39; *State v. Johnson*, 8th Dist. Cuyahoga No. 99377, 2015-Ohio-96, ¶ 66-67; *State v. Taylor*, 2d Dist. Montgomery No. 14456, 1995 Ohio App. LEXIS 5052, *27-28 (Nov. 17, 1995).

**{¶ 50}** Even if we assumed that B.C.M. had a constitutional right to a speedy trial with respect to juvenile delinquency proceedings, we would not conclude that any violation occurred here. Constitutional speedy trial analysis requires consideration of the following factors: (1) length of the delay, (2) reason for the delay, (3) the accused's assertion of his right, and (4) prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182 (1972); *State v. Davis*, 46 Ohio St.2d 444, 446 (1976). No one factor is controlling. *Barker* at 533. However, the first factor – length of the delay – "is to some extent a triggering mechanism." *Id.* at 530. If the defendant shows a delay that is presumptively prejudicial, the court must examine the other factors to determine if a denial of rights occurred. *Id.* at 533-534.

**{¶ 51}** There is no definite length of delay that is presumptively prejudicial, but the Supreme Court has held that delays begin to become presumptively prejudicial as they approach the one-year mark. *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686 (1992), fn. 1. We have previously held that an 11-month delay in a case involving a juvenile bind-over proceeding was not presumptively prejudicial. *Johnson*, 2013-Ohio-856 at ¶ 39. The 103-day delay in bringing B.C.M. to trial in this case is not presumptively prejudicial, therefore we do not need to consider the other factors.

**{¶ 52}** However, even if we were to assume that B.C.M.'s delay was presumptively prejudicial, we would not find that the other *Barker* factors weighed in his favor. 103 days in detention before trial was not inordinately long. Addressing the second factor, B.C.M. argues

that the reason for the delay was because the court and prosecutor set the trial date. We cannot perceive how the court and state agreeing on a trial date within four months of an arrest could have prejudiced B.C.M. Nor does he explain the resulting prejudice.

{¶ 53} As to the third factor, B.C.M. concedes that he only asserted his alleged speedy trial rights immediately prior to the start of trial. Thus, this factor is entitled to minimal weight. With respect to the fourth factor, B.C.M. contends that he suffered prejudice by being separated from his family, which caused him anxiety. While not discounting the emotional significance of a child being separated from his family, we cannot discern how anxiety impaired B.C.M.'s defense at trial. In sum, we find that the minimal delay in bringing B.C.M. to trial was reasonable with no resulting prejudice, and therefore B.C.M., assuming, arguendo, that he had a constitutional right to a speedy trial, was not denied any rights. This fourth assignment of error is overruled.

{¶ 54} The state's Assignment of Error:

{¶ 55} THE JUVENILE COURT ABUSED ITS DISCRETION WHEN IT EXCLUDED [THE VICTIM'S] STATEMENTS TO [THE SOCIAL WORKER] UNDER EVID.R. 803(4). [THE VICTIM'S] STATEMENTS WERE ADMISSIBLE AS A HEARSAY EXCEPTION UNDER EVID.R. 803(4) AND COULD BE CONSIDERED AS SUBSTANTIVE EVIDENCE BY THE COURT.

{¶ 56} The state argues that the trial court abused its discretion when it denied the state's request to introduce the interview video as substantive evidence of B.C.M.'s delinquency under the Evid.R. 803(4) exception to hearsay, "statements for purposes of medical diagnosis or treatment." The state argues that the trial court should have reviewed the video under the *Arnold*[6] standard as set forth by the Ohio Supreme Court and

---

6. Hearsay statements made to a social worker may be admissible if they are made for purposes of medical diagnosis or treatment. *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267. The Ohio Supreme Court

concluded that the interview, while investigatory, served the dual purpose of eliciting information for medical treatment. Applying the *Arnold* standard, the state contends that certain statements by the victim, including her age, the identity of her abuser, and details surrounding the acts of penetration were admissible in evidence under the Evid.R. 803(4) hearsay exception.

**{¶ 57}** B.C.M. counters that the victim was interviewed at a stand-alone child advocacy center not affiliated with any medical provider, the social worker was not a medical professional, and the social worker repeatedly testified that the purpose of the interview was for investigative purposes. B.C.M. argues also that the fact that the interview may have been later provided to medical providers as a routine matter does not make the purpose of the interview "for medical diagnosis or treatment."

**{¶ 58}** The admission or exclusion of evidence by the trial court is reviewed under an abuse of discretion standard. *State v. Robb*, 88 Ohio St.3d 59, 68 (2000). Unless this court determines that the lower court abused its discretion and the state was materially prejudiced, we will not disturb the decision of the trial court. *State v. Martin*, 12th Dist. Butler No. CA2007-01-022, 2007-Ohio-7073, ¶ 9.

**{¶ 59}** The court did not engage in the analysis set forth in *Arnold*. Instead, the court announced that it was denying the state's motion because "the actual video would do very little for the court in terms of its job to try the facts * * * I think the testimony can stand on its own." Thus, exercising its inherent discretion to control the proceedings of a delinquency hearing and limit the introduction of evidence, the court determined that the video would not be helpful in rendering a proper verdict. This comports without our finding in B.C.M.'s third

considered the admissibility of statements given during interviews at child advocacy centers in *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742. *Arnold* noted that these types of interviews seek to elicit two types of statements: statements for the purposes of medical diagnosis and treatment and forensic statements. *Id.* at ¶ 33.

assignment of error that the video was surplusage. Moreover, the court's decision reflects its understanding that live courtroom testimony, subject to cross-examination, is preferable to excepted hearsay. Finally, this was not a case where the victim did not or could not testify. We perceive no abuse of discretion in the court's decision. Moreover, because the state obtained an adjudication, which has now been affirmed, it cannot demonstrate prejudice. Accordingly, the state's sole assignment of error is overruled.

**{¶ 60}** Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.