[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Coker*, Slip Opinion No. 2025-Ohio-2051.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-2051

THE STATE OF OHIO, APPELLANT, *v.* COKER, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Coker*, Slip Opinion No. 2025-Ohio-2051.]

*Criminal law—Sufficiency of the evidence—Rape—R.C. 2907.01(A)—Sufficient evidence was presented at trial on three counts of rape concerning "sexual conduct" as defined by R.C. 2907.01(A)—Court of appeals' judgment reversed and cause remanded to court of appeals.*

(No. 2024-0087—Submitted February 13, 2025—Decided June 12, 2025.)

APPEAL from the Court of Appeals for Wood County,

No. WD-22-054, 2023-Ohio-4339.

_____

SHANAHAN, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, and HAWKINS, JJ., joined.

**SHANAHAN, J.**

{¶ 1} A jury convicted a husband on three counts of raping his wife. The Sixth District Court of Appeals reversed his rape convictions, concluding that the wife's testimony that he forced her to "have sex" against her will could not be construed to mean "sexual conduct" as defined by R.C. 2907.01(A). *See* 2023-Ohio-4339, ¶ 38 (6th Dist.). In reviewing the sufficiency of the evidence, the court of appeals refused to draw inferences against the husband, determined that the evidence against him was insufficient to sustain the convictions, and vacated his convictions. *See id.* at ¶ 38, 40, 42.

{¶ 2} The wife's testimony included descriptions of acts that fall squarely within the statutorily defined meaning of "sexual conduct." Considering the context of her testimony, the wife's subsequent use of the vernacular phrase "have sex" suggests similar acts that meet this definition. When viewed in the light most favorable to the prosecution, the acts described by the wife and her testimony that her husband compelled her to "have sex" are sufficient to support the husband's rape convictions. We therefore reverse the judgment of the Sixth District and remand the matter to that court for it to address the husband's remaining assignments of error.

## I. BACKGROUND

{¶ 3} Appellee, Stephen Coker Jr., and S.O. met at a religious conference in Texas in November 2014. The two kept in contact, and about a month after the conference, S.O. visited Coker in Ohio. Prior to that visit, S.O. made it clear to Coker that she would not have sex with him unless they were married. Coker proposed marriage during that visit, and S.O. accepted his proposal. They married approximately four months later, and in 2016, they moved into a home in Rossford.

{¶ 4} At some point in the marriage after moving to Rossford, Coker began to demand sex more frequently than S.O. wanted to have sex. According to S.O., in Coker's view, she had to submit to having sex with him, regardless of her desire.

The disagreement over Coker's demands for sex eventually led to the unravelling of their marriage.

{¶ 5} A pattern emerged in which S.O. and Coker would have a "date night," usually on a Saturday, in which they would go out to dinner and then come home to play board games, listen to music, drink alcohol and/or smoke marijuana, and "have sex." S.O. testified that on some of these date nights, she would fall asleep only to be woken up by Coker having nonconsensual sex with her—which she clarified meant vaginal intercourse—or performing nonconsensual oral sex on her. The pattern of unwanted sexual conduct continued for several years. By June 2020, S.O. returned to Texas and pursued a divorce.

{¶ 6} After S.O. left Coker, she obtained a protection order against him and Coker was indicted on three counts of rape. Each count indicated a different period: January 30, 2019 (Count Two); April 1 to September 1, 2019 (Count Three); and January 1 to June 14, 2020 (Count One).

{¶ 7} Coker's case was tried to a jury. During the trial, appellant, the State of Ohio, elicited explicit testimony from S.O. detailing the couple's sex life. S.O. testified about the "date nights," which always resulted in sex. S.O. described "having sex" with Coker during the date nights and explained that "having sex" included Coker penetrating her vagina with his penis. S.O. testified that she and Coker would have sex multiple times on date nights and that while the first time generally was consensual, the other times were without her consent. After S.O. provided graphic testimony about the date nights, she testified about each period referenced in the indictment. Regarding those periods, S.O. referenced her earlier testimony and testified about Coker having sex with her without her consent. S.O.'s testimony about the periods referenced in the indictment did not explicitly describe penetration.

{¶ 8} At the close of the State's case and after the conclusion of all evidence, Coker's counsel moved for judgment of acquittal on all counts under Crim.R.

29(A). The trial court denied both motions. The jury convicted Coker on all three counts of rape.

{¶ 9} Coker appealed to the Sixth District, challenging his convictions as not supported by sufficient evidence in one assignment of error and alleging ineffective assistance of counsel and prosecutorial misconduct in additional assignments of error. 2023-Ohio-4339 at ¶ 22 (6th Dist.). The court of appeals reversed the trial court's judgment and vacated Coker's convictions. *Id.* at ¶ 42. The court of appeals determined that there was insufficient evidence of "sexual conduct," a required element of rape under R.C. 2907.02. *See id.* at ¶ 31-40. The court of appeals explained that while S.O.'s testimony about date nights with Coker—which explicitly described penetration and oral sex—provided evidence of sexual conduct, that evidence did not relate to the specific periods referenced in the indictment. *See id.* at ¶ 31-33. According to the Sixth District, the State failed to establish that any of the phrases used during S.O.'s testimony or throughout the trial—such as "sexual activity," "sexual encounters," "being intimate," and "having sex"—denoted that Coker and S.O. had engaged in "sexual conduct." *Id.* at ¶ 38. Because the sufficiency-of-the-evidence assignment of error was dispositive of Coker's appeal, the court of appeals declined to consider his remaining assignments of error. *Id.* at ¶ 41.

{¶ 10} We accepted the State's appeal on the following proposition of law:

> When a term that satisfies the penetration requirement of "sexual conduct" pursuant to R.C. 2907.01(A) is used consistently throughout a rape trial, but it is introduced and explained during testimony that predates the periods of time charged in the indictment, the State is not required to redefine that term during testimony that involves each of the separate charged periods of time.

*See* 2024-Ohio-984.

## II. ANALYSIS

{¶ 11} The State argues that when there is any testimony of penetration or when, in considering the nomenclature used, penetration can be inferred, a rape conviction must stand on sufficiency grounds. Coker claims that without evidence of penetration regarding the specific period referenced in the indictment, a rape conviction cannot stand. We think the State has the better argument.

### A. Standard of review

{¶ 12} When reviewing sufficiency of the evidence, an appellate court must consider "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Brinkley*, 2005-Ohio-1507, ¶ 40, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 1997-Ohio-355, ¶ 49, fn. 4; *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("the relevant question [for sufficiency review] is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" [emphasis in original]).

{¶ 13} A motion for judgment of acquittal under Crim.R. 29(A) must be granted by the trial court "if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A).

### B. Ohio's rape statute

{¶ 14} Ohio's rape statute prohibits a person from "engag[ing] in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2). "Sexual conduct" means "vaginal intercourse . . . ; anal intercourse, fellatio, and cunnilingus . . . ; and, without privilege to do so, the insertion, however slight, of any part of the body or

any instrument . . . into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A). The only issue here is whether there is sufficient evidence of sexual conduct. *See* 2023-Ohio-4339 at ¶ 38 (6th Dist.).

**C. The Sixth District's reliance on *State v. Ferguson* is misplaced**

{¶ 15} Regarding the "date nights," S.O. testified that, typically, the first sexual encounter was consensual but that, thereafter, she was not amenable to further sexual encounters. She "would wake up to [Coker] . . . inserting himself inside" her or performing oral sex on her. She clarified that he would be "penetrating" her, which meant putting his penis in her vagina. S.O. testified that she could not remember what had happened on some date nights; when asked by the prosecution whether there was any evidence that she had had sex on those date nights, she explained that she "would wake up and be very very sore vaginally and swollen."

{¶ 16} In considering the sufficiency of the evidence against Coker, the Sixth District turned to this court's decision in *State v. Ferguson*, 5 Ohio St.3d 160 (1983). *See* 2023-Ohio-4339 at ¶ 28-29, 33, 38 (6th Dist.). In *Ferguson*, the only evidence of sexual conduct was the victim's testimony. She testified that the defendant had performed oral sex on her, but she did not state that she and the defendant had had sexual intercourse. Because the only evidence was the victim's testimony that she and the defendant had "intercourse"—there was no testimony of vaginal or anal penetration—this court reversed the court of appeals' judgment, holding that the defendant's convictions were not "sustained by sufficient evidence of sexual conduct." *Ferguson* at 167-168.

{¶ 17} Here, in following *Ferguson*, the Sixth District refused to "'draw inferences against the accused.'" 2023-Ohio-4339 at ¶ 29 (6th Dist.), quoting *Ferguson* at 168; *see also id.* at ¶ 38 ("*Ferguson* precludes this court from inferring that the terms used by the [S]tate fall within the definition of 'sexual conduct' under

the statute."). However, this standard no longer applies in a sufficiency-of-the-evidence review on appeal. In *Jenks*, this court held that the proper appellate standard of review is "after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." 61 Ohio St.3d at 273. In a rape case, inferences can be drawn against the accused and in favor of the State when the record supports it. *See, e.g.*, *State v. B.C.M.*, 2017-Ohio-1497, ¶ 30 (12th Dist.) (distinguishing *Ferguson* because the victim's testimony was more descriptive of specific physical actions related to penetration and concluding that the victim's testimony was sufficient to infer penetration); *State v. Bell*, 2001 WL 432737, *8-12 (12th Dist. Apr. 30, 2001) (finding sufficient evidence on the element of sexual conduct, even though the victim never used the words "vagina" or "penis" or stated that the defendant had inserted his penis into her vagina, because the victim gave affirmative responses to questions whether the defendant had engaged in sexual intercourse with her, indicated that the defendant was not able to penetrate her when he first tried to have sex with her but eventually penetrated her, and questioned the defendant about her concerns that she would become pregnant); *State v. Calvin*, 1989 WL 65649, *4 (8th Dist. June 15, 1989) (finding the victims' testimony that "this," "the same thing," and "it" happened again on other occasions clearly connected the previous descriptions of rape to the defendant's subsequent conduct and was sufficient to support the defendant's convictions for subsequent rapes); *Skidmore v. Kelly*, 2012 WL 5197251, *6-7 (N.D.Ohio Oct. 19, 2012) (rejecting the petitioner's argument that because the victim did not testify directly that sexual conduct occurred during the periods covered in four counts of the indictment, his convictions on those counts were not supported by the evidence; the victim's testimony that "this stuff" kept happening until she was 15 years old was sufficient as there was ample testimony from her

regarding the continued sexual conduct that the defendant engaged in with her beginning when she was 12 years old).

**{¶ 18}** We conclude that in denying Coker's motions for judgment of acquittal, the trial court correctly evaluated S.O.'s testimony in the light most favorable to the prosecution as required by *Jenks* and its progeny. In contrast, the Sixth District's refusal to draw inferences against Coker was error. In a rape case, inferences can be drawn against the accused and in favor of the State. Further, *Ferguson* is best understood as limited to its facts.

**{¶ 19}** With the correct standard of review in mind, we turn to the evidence in this case.

### D. The phrase "have sex" or a similar phrase can support the element of "sexual conduct" under Ohio's rape statute

**{¶ 20}** The periods referenced in the indictment are January 30, 2019; April 1 to September 1, 2019; and January 1 to June 14, 2020.

*1. January 30, 2019*

**{¶ 21}** S.O. testified that the "same pattern" of sexual encounters occurred from 2016 through January 2019. This "same pattern" of sexual encounters reasonably refers to the "date nights" described by S.O. in her testimony. Again, "date nights" consisted of dinner, games, music, alcohol and/or marijuana, and consensual sex. After the consensual sex, sexual encounters without S.O.'s consent occurred.

**{¶ 22}** When asked at trial whether "recent sexual assaults" were occurring around January 2019, S.O. responded affirmatively. Specifically, on the night of January 30, 2019, S.O. testified that there was "an event of having being intimate with [Coker] and then, again, . . . I said no, and we had sex again and I laid there crying." The January 30, 2019 incident was particularly memorable to S.O. because January 30 is her birthday. S.O. agreed with one of the prosecutor's questions summarizing the events of that night as follows:

Q      So you had sex multiple times that night, you had told him no, and he had sex with you anyway?

A      Yes.

### 2. April 1 to September 1, 2019

**{¶ 23}** S.O. testified that following the January 30, 2019 incident, she went to Texas for five to seven days.  When she returned to Ohio, the unwanted sex with Coker subsided "[i]n the beginning," but that was short lived, as expressed in her testimony:

Q      Was he forcing you to have sex multiple times a night?

A      In the beginning, no.

Q      Did it stay that way for very long?

A      Possibly like a month.

Q      So by summertime were you back to the old cycle of several times a week and several times a night when you didn't want to?

A      More on the weekends.

### 3. January 1 to June 14, 2020

**{¶ 24}** Finally, S.O. provided an account of the events occurring on May 7, 2020:

Q      I'm going to show you what has been marked State's Exhibit 5.  Do you recognize that? . . . .

A      Yes.

Q      What is that?

A      That is a deep bruise on my spine.

Q      What's the date at the top there?

A      May 7th, 2020.

Q      And how did you get that bruise?

A      We were playing Backgammon in the bedroom in front of the door, well, in front of our bathroom.  It was in the bedroom area.  We were having a good time playing old school music and we engaged in sexual activity and it began to get a bit rough.  And there's like a carpet burn.  And I did ask him to stop because it hurt because my back is going into the ground, and my knees were to my chest, and I could not get free.

Q      So he was on top of you.

A      Yes.

Q      Physically holding you down with his body weight?

A      Yes.

Q      That resulted in this bruising?

A      Correct.

Q      During that encounter you had told him to stop?

A      Yes.

*4.  There is sufficient evidence of sexual conduct on all three counts of rape*

{¶ 25} S.O.'s testimony that she and Coker would "have sex," together with her more explicit testimony—given at trial on the same day and in front of the same jury—of vaginal intercourse and penetration, permits the inference that "have sex" means vaginal intercourse and includes penetration.

{¶ 26} There is sufficient evidence of sexual conduct in this case.  After S.O. testified that "have sex" meant vaginal intercourse and penetration, she did not

need to reaffirm that "have sex" included penetration every time that phrase or a similar phrase was used. There is nothing to suggest that the ubiquitous phrase would mean something different on her subsequent use of it or a similar phrase. The State therefore met its burden of proving sexual conduct on all three counts of rape.

### III. CONCLUSION

{¶ 27} The Sixth District Court of Appeals failed to view the evidence in the light most favorable to the prosecution as is required in reviewing sufficiency of the evidence on appeal. Viewing the evidence under the correct standard, we conclude that there is sufficient evidence of sexual conduct on all three counts of rape. We therefore reverse the Sixth District's judgment and remand the matter to that court for it to address Coker's remaining assignments of error.

Judgment reversed
and cause remanded.

_____

Paul A. Dobson, Wood County Prosecuting Attorney, and David T. Harold, Assistant Prosecuting Attorney, for appellant.

Elizabeth R. Miller, Ohio Public Defender, and Kathleen A. Evans, Assistant Public Defender, for appellee.

_____